**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 11-182 |
| | ) | Judge Nora Barry Fischer |
| ADRIAN PETER STOCK., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

I.  INTRODUCTION

In this case, Defendant Adrian Peter Stock is charged in a one count Indictment with a violation of 18 U.S.C. § 875(c) for allegedly making threats against a local police officer in statements he posted on a Craigslist.org ("Craigslist") message board on February 9, 2011. (Docket No. 1).  Defendant has moved to dismiss the Indictment under Rule 12(b)(2) of the Federal Rules of Criminal Procedure, arguing that the statements in his message board posting do not amount to threats which are prohibited by the statute.  (Docket No. 29).  He further claims that his statements do not constitute "true threats" for which one can be held criminally liable without infringing on his right to free speech provided by the First Amendment.  (*Id.*). Alternatively, Defendant contends that if the Indictment is not dismissed, the Court should strike the phrase "among others" from the text of the Indictment.  (Docket No. 32).  The Government opposes both motions.  (Docket No. 40).

The motions have been fully briefed and the Court accepted evidence and heard argument from the parties at a motion hearing held on November 10, 2011.  (*See* Docket Nos. 29, 32, 40, 43, 48).  The transcript of said proceeding was provided to the Court on December 13, 2011 and has also been considered.  (Docket No. 50).  Subsequent to the motion hearing, the parties filed

supplemental briefs in light of the United States Court of Appeals for the Third Circuit's recent decision in *United States v. Melissa A. Huet*, --- F.3d ----, 2012 WL 19378 (3d Cir. Jan. 5, 2012) and both indicated that the Court should restrict its analysis and consider only the allegations contained in the Indictment when evaluating Defendant's motion to dismiss. (*See* Docket No. 53 at 9 ("Huet now makes clear that the analysis is necessarily limited to consideration of the four corners of the indictment."); *see also* Docket No. 54 ("The Court should not consider the testimony … [because] it is not responsive to the actual arguments made in Mr. Stock's Motion to Dismiss.")). The Court agrees with the parties that *Huet* demands that the Court exclude the evidence presented by the parties, including the full Craigslist posting and the testimony presented at the motion hearing, and will thus focus its analysis on the allegations contained within the four corners of the Indictment, only.

For the following reasons, upon consideration of the parties' arguments and the allegations contained in the Indictment, Defendant's Motion to Dismiss the Indictment (Docket No. 29) and Motion to Strike Prejudicial and Irrelevant Surplusage With Citation of Authority (Docket No. 32) are denied.

## II.  BACKGROUND

### a.  Charge in the Indictment

On August 3, 2011, a grand jury returned a one count indictment against the Defendant, charging him with violating 18 U.S.C. § 875(c). (Docket No. 1). The indictment specifically alleges that:

> On or about February 9, 2011, in the Western District of Pennsylvania, the defendant, ADRIAN PETER STOCK, did knowingly and willfully transmit in interstate commerce a communication containing a threat to injure the person of another, that is, the defendant, ADRIAN PETER STOCK, posted a notice on Craig's List, an Internet web site, that contained the following

statements, among others,

> I went home loaded in my truck and spend the past 3 hours looking for this douche with the expressed intent of crushing him in that little piece of shit under cover gray impala hooking up my tow chains and dragging his stupid ass down to creek hills and just drowning him in the falls. but alas I can't fine [sic] that bastard anywhere . . . I really wish he would die, just like the rest of these stupid fucking asshole cops. so J.K.P if you read this I hope you burn in hell. I only wish I could have been the one to send you there.

(Docket No. 1). Section 875(c) provides that "[w]hoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 875(c). The penalties for violating 18 U.S.C. § 875(c) include any or all of the following: a term of imprisonment of not more than five years; a term of supervised release of not more than three years; a fine of not more than $250,000; and, a mandatory special assessment of $100. (Docket No. 2).

### b. *Relevant Procedural History*

Defendant filed four pretrial motions on October 11 and 12, 2011,[1] including the pending motion to dismiss and motion to strike surplusage from the Indictment. (Docket Nos. 29, 30, 31, 32). The Government filed a motion for extension of time, requesting a brief extension to respond to the Defendant's motions. (Docket No. 33). The Court granted the Government's motion. (Docket No. 34). Defendant responded by filing a motion to reconsider the brief extension afforded to the Government. (Docket No. 35). The Court denied the motion to reconsider after hearing argument from counsel during a telephone status conference on October 26, 2011. (Docket Nos. 36, 37). The Court also scheduled a motion hearing on the pretrial

---

[1] The Court notes that Defendant's pretrial motions were due on October 11, 2011. (Docket No. 25). But, three of his pretrial motions were untimely filed between 12:02 a.m. and 12:22 a.m. on October 12, 2011. (Docket Nos. 30, 31, 32). Despite the untimeliness of same, the Court considered all of Defendant's pretrial motions.

motions for November 9, 2011. (Docket No. 38).

The Government timely filed its omnibus response to Defendant's pretrial motions on October 31, 2011. (Docket No. 40). In turn, Defendant filed his reply brief on November 7, 2011. (Docket No. 43). The Court held a motion hearing on November 9, 2011 during which it heard argument from the parties and the Government presented witness testimony.[2] (Docket No. 50). The parties were afforded the opportunity to submit supplemental briefing on the matter and Defendant filed a supplemental brief on November 10, 2011, while the Government declined to make any further submissions. (Docket Nos. 45, 48). The Court also ordered production of the transcript of the motion hearing, which was provided to the Court and the parties on December 13, 2011. (Docket No. 50). The parties then each filed additional supplemental briefs on January 12, 2012, addressing the import of the *Huet* decision, which led the Court to conclude that it will not consider the witness testimony and full Craigslist posting at this stage. (Docket Nos. 53, 54).

As all of the submissions from the parties have been received and considered by the Court, the present motions are ripe for disposition.

### III. MOTION TO DISMISS

The Court first turns to Defendant's Motion to Dismiss, wherein he has moved to dismiss the sole count in the Indictment against him under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure. (Docket No. 29). In short, Defendant argues that the statements attributed to him which are quoted in the Indictment do not constitute threats under 18 U.S.C. § 875(c) and thus, maintains that his statements are protected by the First Amendment. (*Id.*). The Government opposes the motion and contends that the Indictment is sufficient to charge

---

[2] The Court also denied the remainder of Defendant's pretrial motions, without prejudice, i.e., his motion for discovery and motion for 404(b) evidence. (Docket No. 46, 47).

Defendant with making threats under section 875(c) and that any factual issues regarding whether the statements are threats should be resolved by a jury at trial. (Docket No. 40). For the following reasons, the Court agrees with the Government's position.

### a. Legal Standard

Motions to dismiss are governed by Rule 12 of the Federal Rules of Civil Procedure. Fed. R. Crim. P. 12. Specifically, Rule 12(b)(3)(B) provides that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to . . . state an offense." Fed. R. Crim. P. 12(b)(3)(B). The requirements of the contents of an indictment are set forth in Rule 7 of the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 7. Pursuant to Rule 7(c)(1), an indictment must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). The purpose of the promulgation of Rule 7 was to abolish detailed pleading requirements and the technicalities previously required in criminal pleading. *See Huet*, 2012 WL 19378, at *3 (citing *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007)); *see also United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011) (same citation). "Although detailed allegations may have been required under a common law pleading regime, they 'surely are not contemplated by [the Federal Rules].'" *Huet*, 2012 WL 19378, at *3 (quoting *Resendiz-Ponce*, 549 U.S. at 110).

As to the sufficiency of an indictment, the United States Court of Appeals for the Third Circuit has held that:

> [A]n indictment [is] sufficient so long as it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he

> may plead a former acquittal or conviction in the event of a subsequent prosecution.' *United States v. Vitillo*, 490 F.3d 314 (3d Cir. 2007) (internal quotation marks omitted). Moreover, 'no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.' *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir.1989).

*Bergrin*, 650 F.3d at 264 (quoting *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007)).

"Generally, an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *Huet*, 2012 WL 19378, at *3 (citing *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005)).

> In determining whether an indictment validly states the elements of the offense, we need not blindly accept a recitation in general terms of the elements of the offense. *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir.2002). "Federal Rule of Criminal Procedure 12(b)(3)(B) allows a district court to review the sufficiency of the government's pleadings to ... ensur[e] that legally deficient charges do not go to a jury." *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir.2011). Although the Government is not required to set forth its entire case in the indictment, "if the specific facts" that are alleged "fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation," the indictment fails to state an offense. *Panarella*, 277 F.3d at 685; *see United States v. Schiff*, 602 F.3d 152, 162–66 (3d Cir.2010) (finding that indictment alleging "failure to rectify misstatements of others" did not, as a matter of statutory interpretation, state an offense under 18 U.S.C. § 78j(b) and SEC Rule 10b–5). However, the scope of a district court's review at the Rule 12 stage is limited. "[A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir.2000) (citations omitted). "The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29." *Id.* at 661. There is no criminal corollary to the civil summary judgment mechanism. *Id.* In evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in

the indictment. *United States v. Sampson*, 371 U.S. 75, 78–79, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962); *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir.1990). "Evidentiary questions—such as credibility determinations and the weighing of proof—should not be determined at this stage." *Bergrin*, 650 F.3d at 265 (internal marks and citation omitted). Thus, a district court's review of the facts set forth in the indictment is limited to determining whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged. *Panarella*, 277 F.3d at 685; *DeLaurentis*, 230 F.3d at 660.

*Huet*, 2012 WL 19378, at *4.

  b. *Discussion*

Defendant is charged with violating 18 U.S.C. § 875(c), which criminalizes the "transmi[ssion] in interstate or foreign commerce [of] any communication containing any threat to kidnap any person or any threat to injure the person of another." 18 U.S.C. § 875(c). "To prove a violation under this statute, the Government must prove that the defendant 'acted knowingly and willfully' in making the threatening communication and that the communication was 'reasonably perceived as threatening bodily injury.'" *United States v. Voneida*, 337 Fed.App'x 246, 247 (3d Cir. 2009) (quoting *United States v. Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994)).

A statute, such as § 875(c), "which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind." *Watts v. United States*, 394 U.S. 705, 707 (1969) (per curiam). The First Amendment to the United States Constitution provides that, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). However, not all categories of speech are protected, including "true threats," which "encompass those statements

where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003).

The prohibition against "true threats" is meant to "'protect[ ] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Black*, 538 U.S. at 360 (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992)). "True threats" are distinguished "from constitutionally protected speech by considering the context of the speech, the speech's audience, whether the statements are conditional in nature and the response of the audience." *United States v. Oakley*, No. CR. 02-123-01, 2003 WL 22425035, at *3 (E.D.Pa. May 30, 2003); *see also Elonis*, 2011 WL 5024284, at *2 (quoting *Planned Parenthood v. Am. Coalition of Life Activists*, 290 F.3d 1058, 1074-75 n.7 (9th Cir. 2002), *United States v. Kosma*, 951 F.3d at 553-54)). An objective test is employed in this Circuit to determine whether a statement constitutes a true threat which is subject to prosecution without running afoul of the First Amendment. *See United States v. Voneida*, 337 Fed.App'x 246, 248, n.7. "The objective, reasonable person test requires that the defendant intentionally make a statement, written or oral, in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm." *Elonis*, 2011 WL 5024284, at *2 (quoting *Kosma*, 951 F.3d at 559).[3]

In his motion to dismiss, Defendant brings a narrow challenge to the Indictment in this case. (Docket Nos. 29, 43). He argues that the plain meaning of the term "threat" should be adopted and that application of this definition counsels that the statements attributed to him in

---

[3]     As is pointed out by the Court in *Elonis*, courts within the Third Circuit have inconsistently stated that this is a "reasonable speaker" or a "reasonable listener" test. *See Elonis*, 2011 WL 5024284, n.5.

the Indictment do not constitute "threats" which are chargeable under section 875(c). (Docket No. 43 at 1-2). He claims that because his statements are not "threats" under the statute, the Court need not consider whether they constitute "true threats" under the aforementioned objective reasonable person test and should instead dismiss the Indictment as a matter of law. (*Id.* at 2). In response, the Government argues that the allegations in the Indictment are sufficient to state an offense under section 875(c) and further takes the position that a reasonable jury, employing the objective reasonable person standard, could conclude that the Defendant's statements constitute true threats. (Docket No. 40).

### 1. Interpretation of "Threat" Under 875(c)

The term "threat" is not specifically defined in the federal threat statutes, including section 875(c), *see* 18 U.S.C. §§ 871-880. The parties have presented the Court with competing interpretations of this undefined term. Defendant contends that the term should be interpreted consistent with its plain meaning, i.e., a threat is an "avowed present determination or intent to injure presently or in the future." In opposition, the Government maintains that because the term "threat" is qualified by the term "any" in section 875(c), Congress imposed no temporal restrictions on the term, leaving open the possibility that a person could violate the statute by transmitting a "past threat" in interstate commerce.

In resolving this dispute, the Court is cognizant of several well-settled canons of statutory construction. To this end, "[t]he first step in discerning the meaning of a statute is to determine whether the language used 'has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Zavrel*, 384 F.3d 130, 133 (3d Cir. 2004) (quoting *Ki Se Lee v. Ashcroft*, 368 F.3d 218, 222 (3d Cir.2004)); *see also American Tobacco Co. v. Patterson*, 456 U.S. 63 (1982). The Court also "consider[s] not only the bare meaning of the word but also its placement

and purpose in the statutory scheme. The meaning of statutory language, plain or not, depends on context." *Id.* (internal citations and quotations omitted). Further, "[a] term appearing in several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v. United States*, 510 U.S. 135, 143, 114 S.Ct. 655, 660 (1994) (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479, 112 S.Ct. 2589, 2596, 120 L.Ed.2d 379 (1992)).

The United States Court of Appeals for the Third Circuit has not specifically interpreted the term "threat" as it appears in section 875(c). However, in the context of analyzing the term "threat" as it is used in 18 U.S.C. § 876(c), the Court of Appeals adopted the following definition:

> A threat is a serious statement or communication which expresses an intention to inflict injury at once or in the future as distinguished from idle or careless talk, exaggeration or something said in a joking manner. A statement or communication is a threat if it was made under such circumstances that a reasonable person hearing or reading the statement or receiving the communication would understand it as a serious expression of intent to inflict injury.

*Zavrel*, 384 F.3d at 136. Section 876(c) contains very similar statutory language to that included in section 875(c). *Compare* 18 U.S.C. § 875(c), *with* 18 U.S.C. § 876(c). Specifically, section 876(c) prohibits the mailing of "any communication … addressed to any other person and containing <u>any threat</u> to kidnap any person or <u>any threat</u> to injure the person of the addressee or of another." 18 U.S.C. § 876(c) (emphasis added). The Court notes that the term "threat" is qualified by the word "any" in both sections 876(c) and 875(c). Therefore, because terms used within the same statutory text multiple times should be read similarly and sections 875(c) and 876(c) are present in the same statutory scheme and contain nearly identical language, the Court will adopt the definition of "threat" used by the Court of Appeals in *Zavrel* in this case.

2.  <u>Whether Defendant's Statements Constitute "Threats" is a Fact Issue For Trial</u>

Defendant next argues that his statements do not constitute threats under the plain meaning definition that the Court has now adopted.  The Court finds that this argument fails for two primary reasons: first, it relies on a very narrow interpretation of the factual statements attributed to him in the Indictment; and second, it ignores that an objective test is applied to determine whether such factual statements constitute a threat under this legal definition.

Again, the Indictment charges that the Defendant posted the following statement on Craigslist:

> I went home loaded in my truck and spend the past 3 hours looking for this douche with the expressed intent of crushing him in that little piece of shit under cover gray impala hooking up my tow chains and dragging his stupid ass down to creek hills and just drowning him in the falls. but alas I can't fine [sic] that bastard anywhere . . . I really wish he would die, just like the rest of these stupid fucking asshole cops. so J.K.P if you read this I hope you burn in hell. I only wish I could have been the one to send you there.

(Docket No. 1).  In support of his motion, Defendant deconstructs his own words and concludes that they can be broken up into separate clauses which individually consist of merely "descriptions of prior bad thoughts, expressions of ill wishes and a past-perfect-tense declaration of regret" rather than explicit statements which evince an intent to injure another person at once or in the future.  (Docket No. 43 at 10-11, n. 2-4).  Defendant:

> … further maintains that no matter how graphic or detailed or disturbing they may be, the description of the prior bad thoughts and expressions of ill wishes and past tense regret do not constitute threats under section 875(c), because none of the statements taken separately or together is an avowed present determination or intent to injure [J.K.P.] presently or in the future.

(*Id.* at 10-11).

Specifically, Defendant contends that these statements in his posting constitute prior bad

thoughts:

> I . . . spend the past 3 hours looking for this douche with the expressed intent of crushing him in that little piece of shit under cover gray impala hooking up my tow chains and dragging his stupid ass down to creek hills and just drowning him in the falls. but alas I can't fine that bastard anywhere.

(*Id.* at 10, n.2). Next, Defendant alleges that his statements that "i really wish he would die" and "if you read this I hope you burn in hell" were merely "expressions of ill wishes."[4] (*Id.* at 10, n.3). Finally, Defendant maintains that his comment that "i only wish i could have been the one to send you there" constitutes only a "past-perfect tense declaration of regret." (*Id.* at 10, n.4). Defendant essentially takes the position that because none of his words individually amount to an unequivocal and/or explicit statement of a threat to injure J.K.P. presently or in the near future, he has not violated the statute. (*Id.*). He further argues that because his statements are supposedly qualified by his "declaration of regret" they cannot be interpreted as present or future threats of violence. (*Id.*).

Defendant has cited a series of decisions which have adopted his proffered interpretation of the term "threat" under section 875(c), i.e., a statement which evinces an intent to inflict injury on another person presently or in the future.[5] (*See* Docket No. 43 at 3-4); *see also e.g., United States v. Landham*, 251 F.3d 1072, 1084 (6th Cir. 2001); *United States v. Guerrero*, No. IP 03-122-CR, 2003 WL 23220736 *5 (S.D. Ind. 2003); *United States v. Marino*, 148 F.Supp. 75, 77 (D. Ill. 1957); *United States v. Daulong*, 60 F.Supp. 235, 236 (W.D. La. 1945); *United States v. Metzdorf*, 252 F. 933, 938 (D. Mont. 1918); *United States v. Holder*, 302 F.Supp.296, 300 (D.Mont. 1969); *United States v. Leaverton*, 835 F.2d 254, 256 (10th Cir. 1987) and *United*

---

[4] Defendant noticeably omits the following clause from his summation "just like the rest of these stupid fucking asshole cops." (Docket No. 1).

[5] He further claims that his statements cannot be read as threatening J.K.P. presently or in the future and that these decisions support dismissal of the Indictment as a matter of law.

*States v. Havelock*, --- F.3d ----, 2012 WL 29347 (9th Cir. Jan. 6, 2012). None of these decisions are binding authority from the United States Court of Appeals for the Third Circuit and, thus, are at most persuasive authority to this Court.[6] However, this Court is not persuaded that the application of these rulings to the Defendant's statements compel the dismissal of the instant Indictment as a matter of law.

Instead, the Court finds that this case simply does not turn on the statutory construction of section 875(c) and the definition of the term "threat" as used therein. Even though Defendant's proffered definition of the term "threat" as meaning a statement evincing a present or future intent to injure is largely consistent with the definition adopted here, the Court finds that after considering the allegations in the Indictment, as a whole, and in the context in which the statements were made, a reasonable jury could conclude that the communication posted by Defendant on Craigslist constituted a threat toward J.K.P. *See Huet*, 2012 WL 19378, at *4 (the Court "is limited to determining whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged."). The Court does not foreclose the possibility that an indictment charging an individual with a violation of section 875(c) may "fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation" if the "specific facts" charged in such an indictment are clearly deficient and no reasonable juror could find that a threat was made in the communication. *Id.* However, this is not such a case.

If Defendant's statement consisted of only one of the clauses which he claims do not

---

[6]     This Court is generally bound by decisions of the Supreme Court of the United States and the United States Court of Appeals for the Third Circuit. *See United States v. Mitlo*, 714 F.2d 294, 298 (3d Cir. 1983) (citation omitted) ("precedents set by higher courts are conclusive on courts lower in the judicial hierarchy."). Decisions of other Courts of Appeals and District Courts which are not above this Court in the judicial hierarchy are not binding and this Court is not required to follow same. *See Id.*

amount to a threat individually, without more, perhaps his argument would carry more weight.[7]
But, the Court is not required to consider the cited clauses separately and then eliminate them
from further consideration in the type of analysis suggested by the Defendant.  *See Voneida*, 337
Fed. App'x at 248 (noting that "[w]hile some of the statements, taken in isolation, may not rise to
the level of a threat within the meaning of §875(c), that was not the context of the case here").
Indeed, courts within this Circuit have not applied a steadfast rule which requires an unequivocal
or explicit statement of a threat to injure another person in the present or near future, as
Defendant suggests.  *See id.*  Instead, as is discussed above and as is argued by the Government,
an objective test is applied to determine whether the Defendant's statements constitute a threat
under section 875(c) and related "true threat" jurisprudence.  *See Oakley*, 2003 WL 22425035, at
*3-4; *see also Elonis*, 2011 WL 5024284, at *2.

Courts within the Third Circuit have also generally followed the dictates of the Court of
Appeals in *Kosma*, 951 F.2d at 554, which recognized as a general rule that "[w]hether a
speaker's language constitutes a threat is a matter to be decided by the trier of fact."  To
determine otherwise in this case would require a finding by the Court that no reasonable juror
could conclude that the Defendant's statements constitute a threat to injure J.K.P. presently or in
the future after considering the context and/or the circumstances in which the statements were
made.  *See Oakley*, 2003 WL 22425035, at *3-4; *see also Elonis*, 2011 WL 5024284, at *2.  The
Court declines to do so after considering the entirety of the statements in the Indictment.

Thus, the Court agrees with the Government that:

> the indictment presents the quintessential question of fact for a
> jury: whether Stock's statement as quoted in the indictment,
> particularly the portion in which he wrote that he "really wish[es]

---

[7]	For example, if Defendant's only statements were those provided in his illustration, i.e., "I hate [J.K.P.]," the indictment would be subject to dismissal as a matter of law because this bare statement plainly would not evoke fear of present or future injury on behalf of J.K.P.  (*See* Docket No. 54 at 14).

> [his intended victim] would die, just like the rest of these stupid
> fucking asshole cops. so J.K.P. if you read this I hope you burn in
> hell. I only wish I could have been the one to send you there"
> qualifies as a true threat.

(Docket No. 40).  Further, these statements must be examined in conjunction with the remainder

of the wording attributed to the Defendant in the Indictment, i.e., that they were made

immediately after the Defendant:

> went home loaded in my truck and spend the past 3 hours looking
> for this douche with the expressed intent of crushing him in that
> little piece of shit under cover gray impala hooking up my tow
> chains and dragging his stupid ass down to creek hills and just
> drowning him in the falls. but alas I can't fine that bastard
> anywhere:

(Docket No. 1).  The Court finds that reasonable jurors could certainly conclude that these

statements constitute "a serious statement or communication which expresses an intention to

inflict injury" on JKP "at once or in the future." *Zavrel*, 384 F.3d at 136.  They could also

reasonably determine that the Defendant's statements are not "idle or careless talk, exaggeration

or something said in a joking manner."  *Id.*

   To this end, Defendant first states that he purposefully loaded his truck and drove around

for three (3) hours looking for an actual victim, i.e., J.K.P., whom he also referred to as "this

douche."  (Docket No. 1).  Defendant then discloses in explicit detail how he sought to injure

J.K.P. by hooking him up to the tow chains in his truck, dragging him to a creek and drowning

him the falls.  (*Id.*).  Defendant complains that he was unsuccessful in his efforts because he

could not find J.K.P. during his three hour tour of the area. (*Id.*). Despite his lack of success in

locating J.K.P., Defendant states that he still "wishes that J.K.P. would die, just like the rest of

these stupid fucking asshole cops."  (*Id.*).  He next explicitly states that if J.K.P. reads his

statements, that "I hope you burn in hell.  I only wish that I could have been the one to send you

there." (*Id.*). These statements, read in context and as a whole, could reasonably be interpreted as a threat to J.K.P., even under Defendant's proffered definition of the term, threat.

The Court finds that the facts in this case are analogous to those present in *Elonis*, 2011 WL 5024284. There, the defendant was charged with posting threats on the social networking site, Facebook. *Id.* at 1. Among the alleged threats in that case, Elonis posted this statement directed to an identified victim - his then-wife, "[f]old up your PFA and put it in your pocket[.] Is it thick enough to stop a bullet?" The defendant argued that his statements were "simply crude, spontaneous and emotional language expressing frustration, and that they were not sufficiently definite to constitute a true threat." *Id.*, at *2. The district court rejected this argument, concluding that whether this statement was a threat under section 875(c) was a factual issue to be decided by the jury and denied the defendant's motion to dismiss the indictment. *Id.* Thus, the rhetorical question posed by Elonis to his then-wife concerning whether a protection from abuse order she obtained against him could prevent her from being shot by a gun was sufficient to raise a factual issue of whether a threat was made. *Id.* Like *Elonis*, the Defendant's statements – although not explicitly and unequivocally conveying a desire to injure J.K.P. presently or in the future – may be interpreted by a reasonable jury to be such threats against him.

For similar reasons, the facts of this case are distinguishable from those present in *United States v. O'Dwyer*, No. 10-30701, 2011 WL 4448739, at *1-2 (5th Cir. 2011) (not for publication). In *O'Dwyer*, a debtor in a bankruptcy case was charged with sending a threatening email to a court employee. *Id.* at *1. Among other things, he stated that "Maybe my creditors would benefit from my suicide, but suppose I become 'homicidal'? Given the recent 'security breach' at 500 Poydras Street, a number of scoundrels might be at risk if I DO become homicidal." *Id.* at *1. The district court dismissed the indictment, holding that the language in

16

this statement was hypothetical and conditional and did not threaten bodily harm of any particular individual. *Id.* at *2. On appeal, the United States Court of Appeals for the Fifth Circuit affirmed the district court's decision, adopting its reasoning that a hypothetical or conditional statement made generally without being directed at a specific target was not a threat. *Id.* In contrast, the instant statements are directed at a specific individual, J.K.P. Defendant's statements are also not "conditional" or "hypothetical" in the sense that the Defendant here clearly stated that he drove around for a period of three hours with the intent to crush J.K.P., providing explicit detail regarding how he would do so, while *O'Dwyer* only made a general statement that he may become homicidal which was not directed to any specific individual.

The Court also points out that *Guerrero*, 2003 WL 23220736, upon which the Defendant relies for the proposition that "past threats" are not actionable under the federal threat statutes, buttresses this Court's holding, rather than supports the Defendant's position. In *Guerrero*, the defendant was charged with making threats against President George W. Bush in violation of 18 U.S.C. 871(a). *Id.* at *1. The defendant in that case reported to her mental health counselor that she had traveled to Washington, D.C. with a kitchen knife which she hoped to use to kill the President. *Id.* Instead, the defendant returned to her home in Richmond, Indiana and, weeks later, when she was interviewed by federal agents and staff members, she explained that she had decided not to kill the President during her trip to Washington "because the time was not right to kill the President and because it was too far to walk from the bus station to the White House." *Id.* But, she further advised the agents that she was thinking of returning to Washington to kill the President and was considering buying a firearm for this trip. *Id.* at *2.

The defendant in *Guerrero* pled guilty to one count of violating section 871(a) and the district court issued a decision in support of the sentence of five years' probation with six months

of home confinement imposed in that case. *Id.* at *1. The Court did not dismiss the charge in the Indictment at that time; instead, it explained its reasoning for accepting the Defendant's guilty plea, i.e., that a reasonable person could have concluded that the statements to the federal agents were true threats against the President, chargeable under the statute. *Id.* at *4-5. In so holding, the district court commented that:

> a person's statement that she wanted to kill the President yesterday, but that today she feels much better and no longer wants to do so, may not amount to a violation of Section 871, strictly speaking. As troubling as such a statement could be, obviously warranting further inquiry, by itself it is not necessarily a threat within the meaning of the statute.

*Id.* at *5. Thus, the Court found that these prior statements, considered in a vacuum, may not amount to a threat, but these same words still supported the Court's finding that the later statements were threatening in nature rather than "offensive jokes, political hyperbole, or idle chatter." *Id.*

The same is true here. Defendant's statements that he wished J.K.P. would die along with the rest of the "stupid fucking asshole cops" and then "burn in hell" are not merely "crude, spontaneous and emotional language expressing frustration", as he suggests, particularly, when read in conjunction with his other statements explaining that he spent an entire morning attempting to find his target and specifically detailing the manner in which he intended to attack him. (*See* Docket No. 1). These statements are much more serious when considered as a whole, distinguishing them from "idle or careless talk, exaggeration or something said in a joking manner." *Zavrel*, 384 F.3d at 136. Moreover, the Court believes that a reasonable jury could discount the Defendant's statements of "regret" that he wished he could have been the one to send J.K.P. to hell because – unlike the statements in *Guerrero* which were separated by a few weeks' time – the Defendant's statements herein were all made at the same time and are

contained in the same web posting, including the explicit details of how the Defendant had hunted for J.K.P. and planned to maim or kill him. Therefore, the Court does not believe that *Guerrero* supports the relief requested by the Defendant in this case.

Finally, the Court also finds distinguishable the Opinion filed by Circuit Judge Reinhardt in *United States v. Havelock*, --- F.3d ----, 2012 WL 29347 (9th Cir. Jan. 6, 2012), concurring, in part, and dissenting, in part, with the majority's holding in that case. (*See* Docket No. 54 at ¶ 12). In his decision, Judge Reinhardt found that "threat" as used in section 876(c) must be prospective, including "announcements of future or impending action, but not statements regarding past events or retrospective harm." *Havelock*, 2012 WL 29347, at *19. The Court concluded that it was an "impossibility" for the letters sent by the defendant to various news organizations – a so called "Manifesto" containing, among other things, statements taking credit for harming individuals attending Super Bowl XLII in Glendale, Arizona between the New York Giants and New England Patriots – to be considered a threat under the statute. *Id.* Judge Reinhardt reasoned that he would have found that the statements could not constitute threats because the Defendant had placed the letters in the mail on Super Bowl Sunday and no one could have received the letters until after the Giants had upset the Patriots and ruined their perfect season. *Id.* Since the purportedly threatening statements were directed only at the Super Bowl crowd and that event was over, and not be held again until a year later in a different city, a reasonable person could not have been threatened by the defendant's statements. *Id.*

The circumstances in the present matter are markedly different from those in *Havelock*. Defendant's comments regarding J.K.P. do not coincide with any event such as the Super Bowl which was concluded before anyone received the communications – making it a factual impossibility for anyone to fear that acts alleged would be undertaken by Defendant. Moreover,

the statements in this case were posted on the Internet and were immediately viewable by anyone who clicked on the link to Defendant's posting. Thus, *Havelock* does not demand dismissal of the present Indictment.

In this Court's estimation, the specific facts alleged in the Indictment are sufficient to withstand Defendant's motion to dismiss because a reasonable jury could conclude that the statements in the Indictment constitute true threats against J.K.P. which are prohibited under section 875(c) and not protected speech. *See Zavrel*, 384 F.3d at 136. Thus, the specific facts do not "fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'" *Bergin*, 650 F.3d at 264-65 (quoting *Panarella*, 377 F.3d at 685). The Government is entitled to present its evidence at trial, including evidence which may lend further context to the statements made, Defendant will have an opportunity to present evidence of his own, if he chooses and a jury will determine the factual issues pertinent to whether the Defendant's statements in the Craigslist posting constitute threats under the statute or not.

For these reasons, Defendant's Motion to Dismiss the Indictment is DENIED.

IV. MOTION TO STRIKE

Defendant next moves to strike the phrase "among others" from the Indictment under Rule 7(d) of the Federal Rules of Criminal Procedure. (Docket No. 32). In response, the Government argues that the Court should not strike this phrase from the Indictment. (Docket No. 40). Alternatively, the Government suggests that the Court may provide a limiting instruction at trial if the contested phrase is used before the jury or the Government could redact it from the Indictment, as appropriate. (*Id.*). The Court agrees again with the Government's position and will deny the motion to strike.

### a. Legal Standard

As is discussed above, Rule 7(c)(1) requires only that an Indictment set forth a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "Generally, an indictment may include "matters that the government intends to prove at trial, 'even if they are not essential elements of the crime charged,' so long as 'it is in a general sense relevant to the overall scheme charged in the indictment.'" *United States v. Holzwanger*, Crim. No. 10-714, 2011 WL 1741920, at *7 (D.N.J. May 4, 2011) (quoting *United States v. Lalley*, 2010 WL 3946659 at *3 (D.N.J. Oct.5, 2010), *which quoted United States v. Giampa*, 904 F.Supp. 235, 271–272 (D.N.J.1995)).

However, Rule 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d).[8] A court should grant a motion to strike only if the defendant demonstrates that the language in the Indictment is "both irrelevant (or immaterial) and prejudicial." *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006). "This is 'an exacting standard which is met in only rare cases.'" *Holzwanger*, 2011 WL 1741920, at *7 (quoting *United States v. Eisenberg*, 773 F.Supp. 662, 700 (D.N.J. 1991)).

### b. Discussion

In this Court's estimation, Defendant has failed to meet his burden to demonstrate that

---

[8]     The Court notes that the Advisory Committee Notes to Rule 7(d) reflect the same. Specifically, the Notes explain that:

> [t]his rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial. The authority of the court to strike such surplusage is to be limited to doing so on defendant's motion, in the light of the rule that the guaranty of indictment by a grand jury implies that an indictment may not be amended, *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849. By making such a motion, the defendant would, however, waive his rights in this respect.

Fed. R. Crim. P. 7(d), Advisory Committee Notes.

the phrase "among others" contained in the Indictment is *both* irrelevant and prejudicial. Thus, in accord with the Court of Appeals holding in *Hedgepeth*, the Court will not strike this phrase from the Indictment.

At the outset, the Court notes that *United States v. Alsugair*, 256 F.Supp.2d 306, 417 (D.N.J. 2003), upon which Defendant relies, no longer remains good law in light of the United States Court of Appeals for the Third Circuit's decision in *Hedgepeth*. While the Court in *Alsugair* granted the defendant's motion to strike the phrase "and others" from the indictment in that case, it applied a disjunctive test to determine if the language should be stricken under Rule 7(d), i.e., if the language was not relevant or contained inflammatory or prejudicial matter. *Alsugair*, 256 F.Supp.2d at 317. The Court granted the motion to strike after finding that the language prejudiced the defendant, without any analysis of whether the challenged language was relevant. *Id.* Thus, the Court declines to follow *Alsugair* and will apply the conjunctive test set forth by the Court of Appeals in *Hedgepeth*.[9] Indeed, following the test in *Hedgepeth*, another court summarily denied a motion to strike the phrase "among others" from an indictment because the exacting standard to strike surplusage from the indictment had not been met. *See United States v. Robinson*, 2007 WL 790013, at *4 (M.D.Pa. Mar. 14, 2007). The Court now turns to Defendant's arguments.

He first maintains that "[a] phrase or term is irrelevant and immaterial if the government need not establish it in order to sustain the charges against the defendant." (Docket No. 32 at 2-3 (citing *United States v. Lalley*, No. 10-236, 2010 WL 3946659, at *4 (D.N.J. Oct. 5, 2010)). However, Defendant overstates the holding of *Lalley* as there is nothing contained in that

---

[9] The Court further notes that *Algusair* is also factually distinguishable. There, the defendant was charged with engaging in a mail fraud conspiracy and the Court found that he was prejudiced by the phrase "and others" because it possibly connoted that the defendant was involved in a much broader conspiracy involving additional individuals. *See Alsugair*, 256 F.Supp.2d at 317. The instant matter is plainly distinguishable as Defendant is charged with making threatening statements in a single Craigslist posting on February 9, 2011. (Docket No. 1).

decision which limits the terms "relevant" and "material" as used in the Advisory Committee Notes to Rule 7(d) to mean only facts which the Government *must* prove at trial. Indeed, the plain meaning of the terms "relevant" and "material" are much broader. The term "relevant" is generally defined as "[l]ogically connected and tending to prove or disprove a matter in issue; having appreciable probative value" while "material" is often defined as "having some logical connection with the consequential facts." BLACK'S LAW DICTIONARY, "relevant", "material" (9th ed. 2009). The Court agrees with the Government that the phrase "among others" as used in the Indictment is certainly relevant and material to this case given those words' meanings because the phrase informs the reader of the Indictment that the Defendant made additional statements in his Craigslist posting some of which are not contained therein. Further, as is discussed in further detail in the preceding section of this Memorandum Opinion, the context within which the statements were made must be considered in determining whether the statements constitute a threat and the additional statements contained in the posting are clearly relevant and material to that issue. *See Elonis*, 2011 WL 502484, at *2. Therefore, Defendant has not established that the phrase "among others" is irrelevant or immaterial to this case and the Court will not strike the phrase from the Indictment under *Hedgepeth*.

However, even if the phrase was irrelevant or immaterial, Defendant has failed to demonstrate that he would suffer any prejudice by the continued inclusion of the phrase in the Indictment. He argues that he may be prejudiced because this phrase "suggests that the Craigslist posting contained threats that are not actually charged in the Indictment." (Docket No. 32 at ¶ 8). He further states that he "could be prosecuted and perhaps convicted for unidentified statements that are not contained in the Indictment." (*Id.* at ¶ 10). Thus, Defendant claims that he will be prejudiced if the jury is misled by the use of the phrase in the Indictment.

(*Id.* at ¶¶ 8, 10). In response, the Government has proffered that it intends to admit the entire Craigslist posting in its case-in-chief at trial. (Docket No. 40 at 29-30). Further, the Government explains that the reason for the inclusion of the challenged phrase in the Indictment is to protect the Defendant and make clear that the quoted portion of the statement contained in the Indictment consists of a portion of the posting and that those statements in the Indictment are the only allegedly threatening statements he is charged with making.[10] (*Id.* at 30).

In this Court's view, there is no prejudice to the Defendant from the use of the phrase "among others" in the Indictment. The Indictment charges that the Defendant transmitted "a communication" by "post[ing] a notice on Craigslist," which plainly connotes that only a single communication is at issue. (Docket No. 1). Further, the Government has stated that it plans to introduce the entirety of this single Craigslist posting into evidence at trial. (Docket No. 40 at 29). The Government also has conceded that the additional statements contained in the posting that are not quoted in the Indictment are not threatening and were excluded from the Indictment for this reason. (*Id.* at 28). Therefore, Defendant has failed to establish that he will be prejudiced by the continued inclusion of the phrase "among others" in the Indictment. *See Hedgepeth*, 434 F.3d at 612.

In sum, the Defendant's Motion to Strike Prejudicial and Irrelevant Surplusage With Citation to Authority [32] is DENIED. However, given the Defendant's claim that he may suffer some prejudice from the use of the phrase "among others" in the Indictment, the Court will order

---

[10] Specifically, the Government argues that it:

> includes the language "among others" to differentiate defendant's threatening statements, which are included verbatim in the indictment, from his non-threatening, albeit offensive, statements, so as not to mislead the trier of fact into thinking that the threatening communications contained within the posting were the only communications made by the defendant in his posting.

(Docket No. 40 at 28).

the parties to submit a limiting instruction to be provided to the jury in conjunction with its Pretrial Order so as to limit any potential prejudice to the Defendant at trial. Alternatively, if the parties so choose, they may agree to redact the phrase from the version of the Indictment to be used at trial and presented to the jurors. The parties may provide the Court with notice of any such agreement in their submission of joint stipulations, a deadline for which will be set in the Pretrial Order as well.

V. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss the Indictment [29] and Motion to Strike Surplusage from the Indictment [32] are denied. An appropriate Order follows.


_s/Nora Barry Fischer_
Nora Barry Fischer
United States District Judge


Date:   January 23, 2012

cc/ecf:  All counsel of record.